IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**SEABOARD FOODS, LLC,**

      **Plaintiff**,

v.

**CLOVERDALE FOODS COMPANY,**

      **Defendant.**

Case No. 25-2160-DDC-GEB

## MEMORANDUM AND ORDER

Defendant Cloverdale Foods Company agreed to process and package pork bellies into bacon for plaintiff Seaboard Foods, LLC. Plaintiff alleges that defendant breached the contract by disregarding food-packaging regulations and furnishing contaminated bacon. Though plaintiff operates out of Kansas, defendant didn't solicit plaintiff's business; the contract didn't call for either party to perform any service in Kansas; and defendant has no other connection to Kansas. So, defendant has filed a Motion to Dismiss for Lack of Jurisdiction (Doc. 15),[1] arguing

---

[1] Without seeking the court's leave, defendant filed an opening brief consisting of 19 pages, four pages beyond the limit imposed by our local rules. *See* Doc. 16; D. Kan. Rule 7.1(d)(3). Plaintiff didn't ask the court to strike defendant's overlong brief. And briefing on the motion already is complete. So, in the interest of efficiency, the court declines to strike defendant's brief on its own motion. *See* Fed. R. Civ. P. 1. But the court notes that court rules deserve close attention and it's unimpressive when counsel ignore them. The experienced lawyers representing defendant are plenty capable of finding and following our rules. The court also reminds defendant's counsel: local rules are binding mandates with "the force of law." *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (quotation cleaned up).

that the court lacks personal jurisdiction over it. The court agrees with defendant. This Order grants defendant's motion and dismisses this case.[2]

## I.     Background[3]

This dispute involves the parties' pork-processing-and-packaging partnership. For many years, defendant, a North Dakota corporation, Doc. 10 at 1, purchased pork bellies from plaintiff, Doc. 18-1 at 2 (Karlin Decl. ¶ 4). More recently, in 2022, the parties signed a Co-Packing Agreement. It expanded their relationship. *Id.* (Karlin Decl. ¶ 5); Doc. 1-1. Under this multi-year contract, plaintiff—an Oklahoma LLC headquartered in Merriam, Kansas—would arrange for delivery of pork bellies to defendant. Doc. 1 at 1, 3 (Compl. ¶¶ 1, 17). Defendant then would process and package bacon products. *Id.* at 3 (Compl. ¶ 18); Doc. 16-1 at 2 (Bergquist Aff. ¶ 15). Finally, plaintiff would take delivery of the bacon products from defendant's North Dakota facility. Doc. 1 at 4 (Compl. ¶ 19); Doc. 16-1 at 2 (Bergquist Aff. ¶ 17). The Co-Packing Agreement includes a choice-of-law provision, which specifies that Kansas law governs the contract. Doc. 1 at 2 (Compl. ¶ 7); Doc. 1-1 at 17 (Co-Packing Agreement § 17). Plaintiff's Complaint alleges that defendant breached the Co-Packing Agreement by failing to abide good-manufacturing practices and producing defective products with a less-than-warranted shelf life. Doc. 1 at 5–8 (Compl. ¶¶ 26–44).

---

[2]     Defendant asks that the court hold oral argument on its motion. Doc. 15 at 1. Our local rules grant the court discretion to decide whether to conduct oral argument. D. Kan. Rule 7.2. The court declines to do so here because the parties' papers suffice. *See* Fed. R. Civ. P. 1.

[3]     When deciding a personal-jurisdiction motion like this one, the courts takes "as true all well-pled . . . facts alleged in plaintiffs' complaint." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The court also considers the parties' affidavits but resolves all factual disputes in plaintiff's favor. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Here, the parties largely agree on the pertinent facts. *See* Doc. 18 at 2.

Defendant performed its contractually obligated services exclusively in North Dakota. Doc. 16-1 at 2 (Bergquist Aff. ¶¶ 14, 18). In particular, defendant processed and packaged the pork products at its North Dakota facility. *See id.* (Bergquist Aff. ¶¶ 15, 18). And none of defendant's personnel ever traveled to Kansas in connection with the parties' agreement. *Id.* (Bergquist Aff. ¶ 21). Outside of its dealings with plaintiff, defendant maintains virtually zero Kansas in presence. In particular, defendant

- isn't registered to do business in Kansas;
- has no office or other physical presence in Kansas;
- employs no one in Kansas;
- owns no property in Kansas; and
- doesn't advertise or solicit business in Kansas.

Doc. 16-1 at 1 (Bergquist Aff. ¶¶ 5–9).

Plaintiff, for its part, emphasizes the close connection defendant had with plaintiff and its Kansas-based employees. For instance, plaintiff and defendant engaged in weekly calls over eight to ten weeks to ensure that defendant's processing met plaintiff's specifications. Doc. 18-1 at 3 (Karlin Decl. ¶ 8). Near-weekly calls continued between the parties after defendant began to process and package bacon. *Id.* (Karlin Decl. ¶ 9). Over the life of the Co-Packing Agreement, defendant received more than $6 million from plaintiff. *Id.* at 4 (Karlin Decl. ¶ 12). Plaintiff also sent a team to defendant's facility in North Dakota for a site visit before production started and again after quality issues arose. *Id.* at 3 (Karlin Decl. ¶ 8).

Defendant insists that these contacts to Kansas don't suffice for this court to exercise jurisdiction over it, and thus it has moved to dismiss under Federal Rule of Civil Procedure 12(b)(2). Doc. 15. The court now turns to the legal standard that governs motions made under that part of Rule 12.

## II. Legal Standard

Under Rule 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. "'Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.'" *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1307 (10th Cir. 2024) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). Kansas law authorizes courts to exercise "jurisdiction to the full extent permitted by due process[.]" *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citing *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987)); *see also* Kan. Stat. Ann. § 60-308(b)(1)(L), (b)(2). "'The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant.'" *XMission*, 105 F.4th at 1307 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "'The constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established minimum contacts in the forum State.'" *Id.* (quotation cleaned up) (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 108–09 (1987)).

Plaintiff—the party invoking jurisdiction—bears the burden of establishing personal jurisdiction. *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 964 (10th Cir. 2022). Where, as here, a defendant asks the court to decide a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, a plaintiff must make only a prima facie showing of jurisdiction. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings*, 149 F.3d at 1091.

4

"There are two kinds of personal jurisdiction: 'general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction.'" *XMission*, 105 F.4th at 1308 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). The parties agree that general personal jurisdiction doesn't apply here, Doc. 18 at 5 n.3, so the court considers only specific personal jurisdiction.

For "a court 'to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum.'" *XMission*, 105 F.4th at 1308 (quotation cleaned up) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb*, 582 U.S. at 262 (quotation cleaned up) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The specific-jurisdiction inquiry focuses on 'the relationship among the defendant, the forum, and the litigation.'" *XMission*, 105 F.4th at 1308 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). "'The contacts needed for this kind of jurisdiction often go by the name "purposeful availment."'" *Id.* (quoting *Ford Motor Co.*, 592 U.S. at 359).[4] That is, a defendant must purposefully avail itself of the benefits and protections of the forum state's laws. And so, specific jurisdiction arises when "(1) the out-of-state defendant purposefully directed its

---

[4] The parties dispute whether the standard in a contract case is purposeful availment or purposeful direction. Doc. 18 at 9; Doc. 22 at 3 n.1. This is a minor squabble, seizing on semantics and not substance. Our Circuit ordinarily uses the term "purposeful availment" in the contract context. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 n.11 (10th Cir. 2017). But "the terms 'purposeful direction' and 'purposeful availment' denote the same requirement." *Id.*; *see also XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020) (noting that "[p]urposeful direction" is "sometimes referred to as purposeful availment"). In either, the ultimate purpose of the inquiry is "to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state.'" *Dudnikov.*, 514 F.3d at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

activities at residents of the forum State, and (2) the plaintiff's alleged injuries arise out of or relate to those activities." *Id.* (quotation cleaned up). "If a court determines that the minimum contacts standard is satisfied, it next assesses whether 'exercising personal jurisdiction over defendants' would otherwise 'be consonant with traditional notions of fair play and substantial justice,' in order to fully satisfy due process requirements." *Eighteen Seventy*, 32 F.4th at 966 (quoting *Dudnikov*, 514 F.3d at 1071).

The court next applies these governing standards to this case.

**III.     Analysis**

Defendant lacks sufficient minimum contacts for the court to exercise personal jurisdiction over it. Defendant asserts it

- never performed any service in Kansas;
- never sent any product to Kansas;
- isn't registered to do business in Kansas;
- has no office or other physical presence in Kansas;
- employs no person in Kansas;
- owns no property in Kansas;
- didn't arrange for plaintiff to perform any service in Kansas; and
- doesn't advertise or solicit business in Kansas.

Cumulatively, these facts significantly undercut plaintiff's assertion that defendant purposefully availed itself of Kansas's laws and protections. Simply put, "defendant's suit-related conduct" doesn't "create a substantial connection with the forum state." *Walden*, 571 U.S. at 284. Defendant's few contacts with Kansas all flow through plaintiff. But the minimum-contacts inquiry "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. So, "the plaintiff cannot be the only link between the defendant and the forum." *Id.*

Defendant's only contacts with Kansas were the sort of "fortuitous" and "attenuated" ones that aren't sufficient for personal jurisdiction. *XMission*, 105 F.4th at 1308 (quotation cleaned up). The "fact that [plaintiff] happened to be a resident of [Kansas] was of no consequence to [defendant]." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999). Plaintiff has failed to show that "defendant deliberately reached out beyond its home" by "exploiting a market in" in Kansas "or entering a contractual relationship centered there." *Ford Motor Co.*, 592 U.S. at 359 (quotation cleaned up). To be sure, defendant entered a contractual relationship with a legal entity headquartered in Kansas. But the center of the contractual relationship was in North Dakota—the only location where the contract called for defendant to perform. So, personal jurisdiction here isn't proper.

Clamoring for contacts with Kansas, plaintiff emphasizes that defendant

- entered a bilateral, multi-year contract with a company headquartered in Kansas that involved ongoing obligations and contemplated ongoing coordination between the parties;
- caused foreseeable harm to a company headquartered in Kansas;
- received over $6 million of payment remitted from a Kansas office;
- agreed to a Kansas choice-of-law provision.

Doc. 18 at 5–6, 8–9, 12. These facts don't supply the requisite minimum contacts. Plaintiff's position, though colorable, fails to persuade. The court explains its conclusion

To start, each of the individual factors that plaintiff cites—standing alone—is insufficient to confer personal jurisdiction. "A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum." *Benton v. Cameo Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004) (citing *Burger King*, 471 U.S. at 473). Likewise, "[m]ere foreseeability of causing injury in another state is insufficient to establish purposeful direction." *Old Republic Ins.*, 877 F.3d at 905 (citing *Burger King*, 471 U.S.

7

at 474). The same goes for receiving payments from Kansas. *Marcus Food Co. v. Crown Meat Co.*, 779 F. Supp. 514, 519 (D. Kan. 1991) ("The sending of the bill to Kansas and the remitting of payment from Kansas are insufficient contacts to create jurisdiction under [the relevant Kansas statute]."); *see also Newsome v. Gallacher*, 722 F.3d 1257, 1281 (10th Cir. 2013) (holding that law firm's receipt of payment remitted from client's Oklahoma bank was insufficient to confer personal jurisdiction); *FDIC v. British-Am. Ins. Co.*, 828 F.2d 1439, 1443 (9th Cir. 1987) (recognizing "that the receipt of payment alone for services rendered outside the forum state is not sufficient to support personal jurisdiction"). And the same applies to the choice-of-law provision. *See Misco Leasing, Inc. v. Vaughn*, 450 F.2d 257, 260 (10th Cir. 1971) ("The provision that the basic lease was to be governed by Kansas law does not constitute a personal submission to Kansas jurisdiction on the part of [defendant]."); *see also Burger King*, 471 U.S. at 482 (explaining that a choice-of-law "provision standing alone would be insufficient to confer jurisdiction").

   The question then—as plaintiff seems to acknowledge, Doc. 18 at 12—is whether these contacts, in combination, rise to the level of sufficient minimum contacts. They don't. Comparison to precedent proves the point. *See Dudnikov*, 514 F.3d at 1071 (observing that personal-jurisdiction "law is more aspirational than self-defining" so courts "often retreat[] to analogizing individual cases to discrete . . . precedents").

   Consider *Newsome v. Gallacher*, 722 F.3d 1257. There, our Circuit adopted the majority view that "an out-of-state attorney working from out-of-state on an out-of-state matter does not purposefully avail himself of the client's home forum's laws and privileges, at least not without some evidence that the attorney reached out to the client's home forum to solicit the client's business." *Id.* at 1280–81. This view holds that "even though a client may feel the

effects of the lawyer's misdeeds in the client's home forum, the client cannot sue the lawyer there on that account alone." *Id.* at 1280.  In other words, "representing a client resident in a distant forum is not necessarily a purposeful availment of that distant forum's laws and privileges.  The client's residence is often seen by the majority [view] as a mere fortuity." *Id.* (citations omitted).

*Newsome*'s logic suggests the outcome here.  Like the law firm in *Newsome*, defendant formed a business relationship with an entity based in a foreign forum.  Likewise, defendant otherwise had zero presence in the foreign forum and performed all its contractual services in its home forum.  Similarly, defendant "never reached out to [plaintiff] in [Kansas] to solicit its business[.]" *Id.* at 1281.  So, like the law firm in *Newsome*, defendant didn't "purposefully avail [itself] of [plaintiff's] home forum's laws and privileges[.]" *Id.*

Plaintiff largely hangs its hat on *Burger King*.  Doc. 18 at 7–9.  But *Burger King* demonstrates why jurisdiction isn't proper here.  In *Burger King*, defendant, a Michigan resident, "reached out" to plaintiff, a Florida corporation who operated out of Miami, because plaintiff sought to open a Burger King franchise.  471 U.S. at 464–66, 479 (quotation cleaned up).  The parties "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." *Id.* at 480.  And through that contract, defendant voluntarily accepted "the long-term and exacting regulation of his business from Burger King's Miami headquarters[.]" *Id.*  The Supreme Court ultimately concluded that defendant had the requisite minimum contacts with Florida to confer personal jurisdiction on that state.

Two critical differences distinguish this case from *Burger King*.  *One*, plaintiff here—not defendant, like in *Burger King*—solicited the relationship.  It was plaintiff who reached out

9

beyond its Kansas home and solicited a relationship with defendant in North Dakota. *Two*, the contract here didn't call for either party to perform any service in Kansas. This contrasts with the contract at issue in *Burger King*, which called for plaintiff to give the defendant market research; advertising assistance; ongoing training; and "inventory-control guidance"—all from Florida. 471 U.S. at 465. In short, in *Burger King*, the parties' "prior negotiations and contemplated future consequences" plainly involved plaintiff's home state. *Id.* at 479. Here, in contrast, the contract centered on defendant's home state—North Dakota. Any connection to Kansas, at best, was marginal.

Plaintiff tries to twist *Burger King* to suggest that a contract with a Kansas company that contains a Kansas choice-of-law clause provides the requisite minimum contacts because (a) the contract creates a continuing relationship between the parties; (b) a breach causes foreseeable injuries in Kansas; and (c) defendant has purposefully availed itself of the benefits and protections of Kansas law. Doc. 18 at 7–8. That position twists *Burger King* far too far. *Burger King* explicitly rejected the notion that a contract with an out-of-state entity alone establishes sufficient minimum contacts. 471 U.S. at 478. And *Burger King* involved a 20-year franchise agreement—initiated when defendant reached out to plaintiff in Florida—in which defendant accepted "long-term and exacting regulation of his business from Burger King's Miami headquarters[.]" *Id.* at 480. The Co-Packing Agreement at issue here does no such thing; it doesn't knit the parties together as tightly as the franchise agreement from *Burger King*. This leaves the choice-of-law provision standing alone and, as *Burger King* teaches, that just won't suffice. *Id.* at 482.

Plaintiff next compares this case to *Hutton & Hutton Law Firm LLC v. Girardi & Keese*, 96 F. Supp. 3d 1208 (D. Kan. 2015). But, like *Burger King*, *Hutton*'s differences from this case

10

are more salient than its similarities. In *Hutton*, our court exercised personal jurisdiction over a California law firm. The firm had reached out to plaintiff, a Kansas law firm, asking it to serve as co-counsel in a series of lawsuits alleging injuries from a diabetes medication. *Id.* at 1214. The court cited three factors to justify its exercise of personal jurisdiction: the California defendant solicited plaintiff's services; communicated with the Kansas plaintiff via telephone, mail, fax, and email; and entered a contract which required plaintiff to perform work in Kansas. *Id.* at 1219–21.

Just one of the *Hutton* factors—communication with a Kansas-based entity—is present here. Once more, plaintiff reached out from Kansas into North Dakota to solicit defendant's business—not the other way around. And *Hutton* held that this solicitation factor was a critical aspect that distinguished it from other opinions dismissing cases for lack of personal jurisdiction over an out-of-state law firm. *Id.* at 1221–23. Also, unlike *Hutton*, the contract here didn't envision that either party would perform any service in Kansas.

The recurring theme of these cases is clear: Courts can't exercise personal jurisdiction over foreign entities with only paper-thin connections to the forum state. Defendant didn't solicit plaintiff's business in Kansas, perform any service in Kansas, or ask plaintiff to perform any service in Kansas. So, any contact defendant had with Kansas was the sort of "random, fortuitous, or attenuated contact[]" that won't do. *Walden*, 571 U.S. at 286 (quotation cleaned up). Plaintiff has failed to sustain its burden to show purposeful direction or purposeful availment. Defendant lacks sufficient minimum contacts with Kansas for the court to exercise jurisdiction over it. So, the court grants defendant's Motion to Dismiss.[5]

---

[5] Because defendant lacks sufficient minimum contacts with Kansas for the court to exercise personal jurisdiction, the court needn't "determine whether the exercise of personal jurisdiction over [defendant] would offend traditional notions of fair play and substantial justice." *Eighteen Seventy*, 32

## IV.     Dismiss or Transfer

After finding a jurisdictional defect, a district court has discretion either to transfer the action or dismiss it without prejudice. *Trujillo v. Williams*, 465 F.3d 1210, 1222–23 (10th Cir. 2006). Plaintiff hasn't asked the court to transfer this case, but our Circuit has instructed that district courts must make a reasoned decision about transfer versus dismissal. *Id.* at 1223. Our Circuit has explained that "where the court determines that it lacks jurisdiction and the interests of justice require transfer rather than dismissal, the correct course is to transfer the action pursuant to [28 U.S.C.] § 1631." *Id.* (quotation cleaned up). Factors governing the decision to transfer include finding (1) "that the new action would be time barred," (2) "that the claims are likely to have merit," and (3) "that the original action was filed in good faith" rather than filed in a patently improper forum. *Id.* at 1223 n.16. The court concludes that transferring this case isn't in the interests of justice, so it dismisses the case without prejudice. Here's why.

Plaintiff wouldn't face a time bar preventing refiling in North Dakota. In Kansas, the statute of limitations for a breach-of-contract claim based on a written contract is five years. Kan. Stat. Ann. § 60-511(1). Plaintiff alleges that defendant breached their contract in 2024. Doc. 1 at 5 (Compl. ¶ 26). So, plaintiff has plenty of time to refile this action after dismissal. This factor weighs against transfer.

After "taking a peek at the merits[,]" the court has no reason to believe that this case is "frivolous" or "time[ ]barred." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 108 (10th Cir. 2012) (quotation cleaned up). A transfer of this case won't run afoul of the Circuit's concerns articulated in *Grynberg* by "raising false hopes" or "wasting judicial resources" on a

---

F.4th at 966 (quotation cleaned up). Likewise, the court needn't reach defendant's alternative argument about venue. *See* Doc. 16 at 16–19.

"clearly doomed" case. *Id.* This factor—whether the claims likely have merit—thus weighs in favor of transfer.

The final factor *Trujillo* highlighted—whether plaintiff should have realized that this forum wasn't proper—is neutral. In light of the caselaw, plaintiff signed on for an uphill battle trying to hale defendant into court in Kansas. But the ultimate outcome required in-depth analysis. So, the court assigns little value to this factor. *See id.* at 108 (finding no error where district court assessed this factor as neutral because the personal-jurisdiction "issues were at least somewhat difficult to resolve").

In total, one factor supports transfer, one factor is neutral, and one factor supports dismissal. On this mixed hand, the court concludes that dismissal is appropriate. Recall that plaintiff never asked the court to transfer the case, and it's ultimately plaintiff who has "the burden of proving grounds for transfer." *Id.* (quotation cleaned up). In reality, the only prejudice plaintiff faces from dismissal is that it will lose its filing fee. But our Circuit has explained that a filing fee isn't the sort of prejudice that requires transfer. *See Witte v. Sloan*, 250 F. App'x 250, 254 (10th Cir. 2007) (explaining that "the financial burden of a second filing fee and having to redraft pleadings . . . are not the severe burdens that motivated the enactment of § 1406(a)"). Dismissal also gives plaintiff the option to appeal this Order to the Tenth Circuit should it choose to do so. *See FDIC v. McGlamery*, 74 F.3d 218, 221–22 (10th Cir. 1996) (explaining that orders transferring cases under § 1406(a) aren't immediately appealable). Given the size of the controversy and plaintiff's capacity to pay a second filing fee, the court concludes it should leave plaintiff a free hand—appeal or file anew. The court thus dismisses this case without prejudice.

## V.     Conclusion

Defendant lacks sufficient minimum contacts with Kansas for the court to exercise personal jurisdiction over it.  The court thus grants defendant's Motion to Dismiss (Doc. 15) and dismisses this case without prejudice.  The court directs the Clerk of Court to close this case.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Cloverdale Foods Company's Motion to Dismiss for Lack of Jurisdiction (Doc. 15) is granted.

**IT IS SO ORDERED.**

**Dated this 3rd day of February, 2026, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**